**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **JEANINE RAPCZYNSKI** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. WGC-15-2639** |
| | ) | |
| **CAROLYN W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**<u>MEMORANDUM OPINION</u>**

Plaintiff Jeanine Rapczynski ("Ms. Rapczynski" or "Plaintiff") brought this action pursuant to 42 U.S.C. § 405(g) for review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her claims for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act, 42 U.S.C. §§ 401-433, 1381-1383f.  The parties consented to a referral to a United States Magistrate Judge for all proceedings and final disposition.  *See* ECF Nos. 3, 7.[1]  Pending and ready for resolution are Plaintiff's Motion for Summary Judgment (ECF No. 16) and Defendant's Motion for Summary Judgment (ECF No. 17).  No hearing is deemed necessary.  *See* Local Rule 105.6 (D. Md. 2016). For the reasons set forth below, Plaintiff's Motion for Summary Judgment will be denied, but her alternative request for a remand will be granted.  Defendant's Motion for Summary Judgment will be denied.

---

[1]  The case was subsequently reassigned to the undersigned.

1. **Background**.

On February 18, 2010[2] Ms. Rapczynski protectively filed applications for DIB[3] and SSI alleging a disability onset date of January 1, 2008[4] due to bipolar disorder, Attention Deficit Hyperactivity Disorder ("ADHD"), anxiety and borderline personality traits. *See* R. at 312. Ms. Rapczynski's applications were denied initially on August 17, 2010. R. at 132-35. On an unknown date Ms. Rapczynski requested reconsideration. R. at 136. On December 1, 2010 the claims were denied again. R. at 139-40, 141-42. The Social Security Administration received Ms. Rapczynski's request for hearing by an Administrative Law Judge ("ALJ") on December 29, 2010. R. at 143.

On March 7, 2012 ALJ Emerson convened a hearing. R. at 26-53. Ms. Rapczynski was represented by counsel. "The claimant amended her onset date at her hearing from January 1, 2008 to February 1, 2009." R. at 113; *see* R. at 266 (March 7, 2012 Request for Alleged Amended Onset Date). During the hearing the ALJ obtained testimony from Ms. Rapczynski and a Vocational Expert ("VE"). In the March 14, 2012 decision the ALJ found Ms. Rapczynski has not been under a disability, as defined in the Social Security Act, from February 1, 2009 through the date of the decision. R. at 119. On April 2, 2012 Ms. Rapczynski requested a review of the ALJ's decision. R. at 188-89. On March 21, 2013 the Appeals Council remanded the case to the ALJ. R. at 127. The Order of Appeals Council, remanding the case to the ALJ, states,

---

[2] This date is identified as the protective filing date on the April 2, 2010 *Disability Report - Field Office - Form SSA-3367*. R. at 306. The actual applications for SSI and DIB list *March 9, 2010* as the filing date. *See* R. at 240, 247. Inexplicably, the September 27, 2010 *Disability Report - Field Office - Form SSA-3367* lists September 27, 2010 as the protective filing date. R. at 323. A third, undated *Disability Report - Field Office - Form SSA-3367* does not identify a protective filing date. R. at 331.

[3] "The claimant meets the insured status requirements of the Social Security Act through December 31, 2013." R. at 13.

[4] Ms. Rapczynski's SSI application states her disability began October 15, 1996. R. at 240.

The Administrative Law Judge issued a decision on March 14, 2012.  The claimant has asked the Appeals Council to review this decision.

The Appeals Council grants the request for review under the error of law and substantial evidence provisions of the Social Security Administration regulations (20 CFR 404.970 and 416.1470). Under the authority of 20 CFR 404.977 and 416.1477, the Appeals Council vacates the hearing decision and remands this case to an Administrative Law Judge for resolution of the following issues:

- The hearing decision does not contain an evaluation of the treating source opinion of Stephanie Tucker, M.D., in Exhibit 30F. In her report, Dr. Tucker opined the claimant has severe anxiety, paranoia and irritability, which impede her ability to participate in ongoing work and social interactions. Dr. Tucker indicated the claimant experiences a substantial loss in her ability to respond appropriately to supervision, co-workers, and usual work situations, and in dealing with changes in a routine work setting. Further, Dr. Tucker opined that the claimant exhibits marked restrictions in social functioning and concentration, persistence and pace (Exhibit 30F).

- The decision does not contain an evaluation of the third party source opinions provided by Ms. M. Noel Kowalczyk, LSWA, and Ms. Milka Muse, BSW; Exhibits 21E and 22E, respectively. Both Ms. Kowalczyk and Ms. Muse state the claimant is socially isolated, has difficulty interacting with others and controlling her moods and exhibits paranoia.

- Section F of the claim file includes a May 16, 2011 assessment from Katie Kalbaugh, LCSW-C, which was submitted shortly before the hearing decision and not included on the Exhibit List or addressed in the decision. Ms. Kalbaugh opined the claimant has marked difficulties in social functioning and in concentration, persistence or pace due to bipolar and anxiety disorders.

Upon remand, the Administrative Law Judge will:

- Obtain additional evidence concerning the claimant's mental impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative

3

examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913).

- Give consideration to the treating and other source opinions pursuant to the provisions of 20 CFR 404.1527 and 416.927 and Social Security Rulings 96-2p, 96-5p and 06-3p and explain the weight given to such opinion evidence[.]

- If warranted, obtain evidence from a medical expert to clarify the nature and severity of the claimant's mental impairments (20 CFR 404.1527(f) and 416.927(f)) and Social Security Ruling 96-6p).

- Give further consideration to the claimant's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 CFR 404.1545 and 416.945 and Social Security Rulings 85-16 and 96-8p).

- If warranted by the expanded record, obtain supplemental evidence from a vocational expert to clarify the effect of the assessed limitations on the claimant's occupational base (Social Security Ruling 83-14). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The Administrative Law Judge will ask the vocational expert w[he]ther the claimant remains capable of performing h[er] past relevant work and, if necessary, will ask the vocational expert to identify examples of other appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 404.1566 and 416.966). Further, before relying on the vocational expert evidence, the Administrative Law Judge will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-04p).

In compliance with the above, the Administrative Law Judge will offer the claimant an opportunity for a hearing, take any further action needed to complete the administrative record and issue a new decision.

R. at 128-30.

A supplemental hearing was convened on January 30, 2014. R. at 54-106. Ms. Rapczynski was represented by counsel. ALJ Emerson obtained testimony from Ms. Rapczynski, Ms. Rapczynski's case manager (a licensed graduate professional counselor) and a VE. In the February 27, 2014 decision the ALJ found Ms. Rapczynski has not been under a disability, as defined in the Social Security Act, from January 1, 2008[5] through the date of the decision. R. at 25. On April 24, 2014 Ms. Rapczynski requested a review of the hearing decision.  R. at 4-7. On July 27, 2015 the Appeals Council denied Ms. Rapczynski's request for review, R. at 1-3, thus making the ALJ's determination the Commissioner's final decision.

2. **ALJ's Decision**.

The ALJ evaluated Ms. Rapczynski's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. Ms. Rapczynski bears the burden of demonstrating her disability as to the first four steps. At step five the burden shifts to the Commissioner. *Mascio v. Colvin*, 780 F.3d 632, 635 (4th Cir. 2015).

At step one the ALJ found Ms. Rapczynski has not engaged in substantial gainful activity since February 1, 2009, the amended alleged onset date. R. at 115. The ALJ concluded at step two that Ms. Rapczynski has the following severe impairments: substance abuse dependence, bipolar disorder, anxiety disorder, personality disorder, and learning disorder. *Id.* The ALJ found Ms. Rapczynski's alleged mental retardation unsupportable, explaining:

> [T]he undersigned finds no evidence to support such a medically determinable impairment during the development period. The undersigned does not accept the findings of Dr. Ansel in Exhibit 31F which state that the claimant has a full scale IQ of 59 (Ex.

---

[5] The ALJ used this date as Ms. Rapczynski's alleged onset date *despite* acknowledging "[a]lthough the claimant later amended the onset date to February 1, 2009. . . ." R. at 14. *See* R. at 266 (March 7, 2012 Request for Alleged Amended Onset Date).

31F/2). The medical evidence, the claimant's education, and the claimant's past work history do not support this finding. An IQ of 59 is almost 30 points lower than other IQ scores found throughout the record. In September 1998, at the age of 16, the claimant had an IQ score of 87 and in 1988, at age 6, the claimant had an IQ score of 88 (Ex. 13E/1,5; 19E/2). These scores show the claimant did not suffer from mental retardation during the developmental period. Additionally, the claimant worked as a semi-skilled [waitress] for nine months, as a manager trainee for three months, and as a bus aide. Performance of these jobs is inconsistent with an IQ of 59. The claimant's earning record also supports higher functioning. She earned $13,943 in 2005 and $13,827 in 2006 when she was in her early 20s. The claimant graduated from high school with a solid "[C]" average (2.037 grade point average, class rank 298 out of 395), which also precludes such a finding (Ex. 16E/5).

R. at 116.

At step three the ALJ found Ms. Rapczynski does not have an impairment or combination of impairments which meets or medically equals a listed impairment. The ALJ specifically considered Listings 12.02 (Organic Mental Disorders), 12.04 (Affective Disorders), 12.06 (Anxiety Related Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders).

In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special technique to evaluate the severity of Ms. Rapczynski's mental impairments. The four broad functional areas—(1) activities of daily living, (2) social functioning, (3) concentration, persistence, or pace, and (4) episodes of decompensation—are known as the "paragraph B" criteria for most of the mental disorders listed in Appendix 1. The ALJ determined Ms. Rapczynski has a *mild* restriction in her activities of daily living. "The claimant lives with her two-year-old child. The child is autistic but the claimant appears able to care for the child's extensive needs. The claimant takes care of her personal needs. She does some chores and shopping." R. at 116. With regard to social functioning, the ALJ found Ms. Rapczynski has

*moderate* difficulties. "The claimant has some issues with anger and paranoia around others but she visits with people occasionally[6] (Exhibit 5F)." *Id.*

As for concentration, persistence, or pace, the ALJ determined Ms. Rapczynski has *moderate* difficulties. The ALJ noted Ms. Rapczynski has some difficulty focusing and remaining on task. *Id.* Fourth, the ALJ found Ms. Rapczynski has not experienced any episodes of decompensation.  *Id.*  Because Ms. Rapczynski's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria are not satisfied. R. at 117. The ALJ then considered and found a lack of evidence establishing the presence of the "paragraph C" criteria. *Id.*

Next, the ALJ proceeded to determine Ms. Rapczynski's residual functional capacity ("RFC").  The ALJ found Ms. Rapczynski has the RFC to perform a full range of work at all exertional levels however she is restricted by the following nonexertional limitations: "simple, routine, repetitive tasks in a low stress work environment (i.e. no strict production quotas) and can occasionally and superficially interact with the public, coworkers, supervisor." *Id.* At step four the ALJ found Ms. Rapczynski is capable of performing her past relevant work as a housekeeper/cleaner and a stocker. R. at 119. He therefore determined Ms. Rapczynski has not been under a disability from February 1, 2009 through the date of the decision. *Id.*

After the supplemental hearing on January 30, 2014, the ALJ re-evaluated Ms. Rapczynski's claims for DIB and SSI using the sequential evaluation process set forth in 20 C.F.R. §§ 404.1520, 416.920. At step one the ALJ found Ms. Rapczynski has not engaged in

---

[6] The record actually states, "She said that people visit her occasionally."  R. at 600.

substantial gainful activity since January 1, 2008, the alleged onset date.[7] R. at 13. At step two

the ALJ determined Ms. Rapczynski has the following severe impairments: substance

dependence, bipolar disorder, psychotic disorder, anxiety disorder, personality disorder, and

learning disorder. R. at 14.   At step three the ALJ found Ms. Rapczynski does not have an

impairment or combination of impairments which meets or medically equals a listed impairment.

The ALJ specifically considered Listings 12.03 (Schizophrenic, Paranoid and Other Psychotic

Disorders), 12.04 (Affective Disorders), 12.05 (Mental Retardation), 12.06 (Anxiety Related

Disorders), 12.08 (Personality Disorders), and 12.09 (Substance Addiction Disorders). *Id.*

In accordance with 20 C.F.R. §§ 404.1520a, 416.920a, the ALJ followed a special

technique to evaluate the severity of Ms. Rapczynski's mental impairments. The four broad

functional areas—(1) activities of daily living, (2) social functioning, (3) concentration,

persistence, or pace, and (4) episodes of decompensation—are known as the "paragraph B"

criteria for most of the mental disorders listed in Appendix 1 ("paragraph D" criteria for Listing

12.05). The ALJ determined Ms. Rapczynski has a *mild* restriction in her activities of daily

living. "She engages in independent personal care, prepares meals, does laundry, cares for a cat,

and drives a couple of times a week. The claimant also cares for her disabled, autistic daughter,

which includes dressing her, brushing her teeth, and seeing her off to school. There is no

---

[7] "The claimant worked after the alleged disability onset date but this work activity did not rise to the level of substantial gainful activity. In her Work Activity Report, the claimant reports working from September 2008 to January 27, 2009 as a bus aide making 10 dollars an hour, six hours a day. She reports working five hours a day from January 2008 to March 21, 2008 as a manager trainee. She reports working four hours a day from September 2007 to June 2008 as a waitress at TGI Fridays. Thus, in 2008, the only months the claimant did not work were July and August. Her earnings record shows $9629.59 of income in 2008. Thus, the claimant earned about $962.00 a month, which is slightly more than substantial gainful activity level for the 10 months she worked, not including July and August 2008. Although the claimant later amended the onset date to February 1, 2009, Omni House, Inc. records in April 2010 indicate she is working at a trailer park. She has not reported to the Social Security Administration her earnings from the trailer park, thereby undermining her credibility." R. at 13-14 (footnotes omitted).

evidence of the claimant's inability to perform functional transfers (i.e., getting from bed to chair or on and off the toilet)." R. at 14 (footnote omitted).

With regard to social functioning, the ALJ found Ms. Rapczynski has *moderate* difficulties. The ALJ noted Ms. Rapczynski visits her daughter's father, sees a therapist weekly and sees a psychiatrist monthly. "The State agency psychological consultants found moderate limitation in the claimant's ability to interact appropriately with the general public and accept instructions and respond appropriately to criticism from supervisors. However, the State found no significant limitation in the claimant's ability to ask simple questions or request assistance, get along with coworkers or peers without distracting them or exhibiting behavioral extremes, or maintaining socially appropriate behavior and adhere to basic standards of neatness and cleanliness." R. at 14-15 (footnote omitted). As for concentration, persistence, or pace, the ALJ determined Ms. Rapczynski has *moderate* difficulties. "The claimant experiences some difficulty with memory and concentration. However, she is able to understand and follow simple instructions independently." R. at 15 (footnotes omitted).  Finally, the ALJ found Ms. Rapczynski has not experienced any episodes of decompensation of extended duration. Because Ms. Rapczynski's mental impairments do not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, the "paragraph B" criteria ("paragraph D" criteria for Listing 12.05) are not satisfied. *Id.*

The ALJ then considered the "paragraph C" criteria. The ALJ found no evidence to establish the presence of "paragraph C" criteria "because the record is devoid of 'repeated' episodes of decompensation, potential episodes of decompensation, or the claimant's inability to function outside her home or a highly supportive living arrangement." *Id.*

Listing 12.05 has other requirements the ALJ considered. "Paragraph A" of this listing is satisfied if the claimant's mental incapacity is evidenced by dependence upon others for personal needs, such as toileting, eating, dressing or bathing <u>and</u> an inability to follow directions which precludes the use of standardized measures of intellectual functioning. "In this case, these requirements are not met because the claimant engages in independent personal care. In addition, she cares for her disabled, autistic daughter." R. at 16. The ALJ determined the "paragraph B" criteria are not satisfied because the claimant does not have valid verbal, performance, or full scale IQ of 59 or less. The ALJ acknowledged the claimant attaining a FSIQ of 59 on a psychological consultative examination conducted on February 27, 2012. *See* R. at 1569-71 (Ex. 31F). "However, a FSIQ of 59 is almost 30 points lower than other[] scores in the record. The claimant's work as semi-skilled waitress for 9 months, as a manager trainee for 3 months, and a bus aide are not consistent with the adaptive functioning associated with an intellectual disability." R. at 16. Finally, the ALJ determined the "paragraph C" criteria of Listing 12.05 are not satisfied "because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." *Id.*

Next, the ALJ proceeded to determine Ms. Rapczynski's RFC. The ALJ found Ms. Rapczynski has the RFC to perform a full range of work at all exertional levels however she is restricted by the following nonexertional limitations: "she can only perform simple, routine and repetitive tasks in a low stress work environment. 'Low stress' means no strict production quotas. She can only occasionally and superficially interact with the public, coworkers and supervisors." R. at 16.

10

At step four the ALJ found Ms. Rapczynski is capable of performing her past relevant work as a Housekeeper (light exertion, unskilled) and as a Stocker (medium exertion, unskilled). "This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity." R. at 23. Despite the ALJ's finding at step four, the ALJ made an alternative finding at step five. The ALJ considered Ms. Rapczynski's age (25 years old on the alleged disability onset date, defined as a younger individual age 18-49), education (high school graduate and able to communicate in English), work experience (transferability of job skills not material) and her RFC. Even though Ms. Rapczynski's ability to perform work at all exertional levels has been compromised by nonexertional limitations, thereby "erod[ing] the occupational base of unskilled work at all exertional levels," R. at 24, relying on the testimony of the VE, the ALJ found the Social Security Administration met its burden of proving Ms. Rapczynski is capable of performing various other jobs[8] that exist in significant numbers in the national economy. The ALJ therefore found Ms. Rapczynski has not been under a disability from January 1, 2008 through the date of this decision. R. at 25.

3. **Standard of Review**.

The role of this court on review is to determine whether substantial evidence supports the Commissioner's decision and whether the Commissioner applied the correct legal standards. 42 U.S.C. § 405(g); *Mascio*, 780 F.3d at 634; *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). It is more than a scintilla, but less than a preponderance, of the evidence presented, *Shively v. Heckler*, 739 F.2d

---

[8] Night cleaner (heavy, unskilled), night stocker (medium, unskilled), and sorter (light, unskilled). R. at 24, 104.

987, 989 (4th Cir. 1984) (citations omitted), and it must be sufficient to justify a refusal to direct

a verdict if the case were before a jury. *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990).

This court cannot try the case *de novo* or resolve evidentiary conflicts, but rather must affirm a

decision supported by substantial evidence. *Id.*

4. **Discussion.**

Plaintiff raises several issues claiming prejudicial error by the ALJ warranting a remand.

The undersigned addresses the alleged errors below.

A.    *Alleged Failure to Comply with Acquiescence Ruling (AR) 00-1(4)*

On March 13, 2001 an ALJ determined Ms. Rapczynski was entitled or allowed to

receive Social Security Disability benefits. *See* R. at 308. This favorable finding with regard to a

previous claim of disability, Plaintiff contends, should have been considered as evidence when

her current claims were adjudicated. Plaintiff relies upon the following from AR 00-1(4):

> SSA interprets the decision by the United States Court of Appeals
> for the Fourth Circuit in Albright to hold that where a final
> decision of SSA after a hearing on a prior disability claim contains
> a finding required at a step in the sequential evaluation process for
> determining disability, SSA must consider such finding as
> evidence and give it appropriate weight in light of all relevant facts
> and circumstances when adjudicating a subsequent disability claim
> involving an unadjudicated period.

AR 00-1(4), 2000 WL 43774, at *4 (Jan. 12, 2000) (S.S.A.).

The prior claim establishing Ms. Rapczynski's disability was a disabled child ("DC")

claim. *See* R. at 308. For reasons unknown those disability benefits terminated in February 2002.

*Id.* The administrative record does not contain the jurisdictional documents or the ALJ's decision

pertaining to this claim. *See* ECF No. 16-1 at 2. Thus what was/were Ms. Rapczynski's severe

impairment(s) and whether the severe impairment(s) met the listing(s), medically equaled the

listing(s) or was/were functionally equivalent to the listing(s) are unknown. The standard for

establishing a disabled child claim is different from the requirements for a disabled adult claim. *Compare* SSI for a child (three step sequential evaluation process under 20 C.F.R. § 416.924[9]) *to* SSI for an adult (five step sequential evaluation process under 20 C.F.R. § 416.920[10]). As the Court of Appeals for the Fourth Circuit noted, "'[t]he SSA treats the doctrine of res judicata as applying when it has 'made a previous determination or decision . . . on the same facts and on the same issue or issues, and this previous determination or decision has become final either by administrative or judicial action.'" *Monroe v. Colvin*, ___ F.3d ___, No. 15-1098, 2016 WL 3349355, at *9 (4th Cir. June 16, 2016) (quoting 20 C.F.R. §§ 404.957(c)(1), 416.1457(c)(1)). Moreover, as the Commissioner observed, "[b]ecause Ms. Rapczynski's prior DC claim presumably implicated a different standard for establishing disability than her current DIB and SSI claims, Lively[11] and Albright[12]—both of which involved a prior and a subsequent claim for adult disability benefits—are distinguishable, and AR 00-1(4) does not apply." ECF No. 17-1 at 8. The undersigned agrees.

Further, in summarizing the background of her claims, Plaintiff notes she applied for and was awarded Social Security benefits on March 13, 2001. At some point those benefits were terminated. "Ms. Rapczynski then re-applied for Title II Disability Insurance Benefits and Supplemental Security Income benefits on March 9, 2010." ECF No. 16-1 at 2. The gap between the award of benefits in 2001 and Ms. Rapczynski "re-applying" is nine years. Time is a pertinent matter under AR 00-1(4).

---

[9] Step 1- Is the child engaged in substantial activity; Step 2 - Does the child have a medically determinable impairment(s) that is severe; Step 3 - Does the child's impairment(s) meet, medically equal or functionally equal a listed impairment?

[10] Step 1 - Is the claimant engaged in substantial gainful activity; Step 2 - Does the claimant have a medically determinable impairment(s) that is severe; Step 3 - Does the severe impairment(s) meet or medically equal a listing; Step 4 - Can the claimant perform his/her past relevant work; Step 5 - If the claimant cannot perform his/her past relevant work, considering claimant's age, education, work experience and residual functional capacity, can the claimant make an adjustment to other work?

[11] *Lively v. Secretary of Health & Human Services*, 820 F.2d 1391 (4th Cir. 1987).

[12] *Albright v. Commissioner of Social Security Admin.*, 174 F.3d 473 (4th Cir. 1999).

> Where the prior finding was about a fact which is subject to change
> with the passage of time, such as a claimant's residual functional
> capacity, or that a claimant does or does not have an impairment(s)
> which is severe, the likelihood that such fact has changed generally
> increases as the interval of time between the previously
> adjudicated period and the period being adjudicated increases. An
> adjudicator should give greater weight to such a prior finding when
> the previously adjudicated period is close in time to the period
> being adjudicated in the subsequent claim, e.g., a few weeks as in
> Lively. An adjudicator generally should give less weight to such
> prior finding as the proximity of the period previously adjudicated
> to the period being adjudicated in the subsequent claim becomes
> more remote, e.g., where the relevant time period exceeds three
> years as in Albright.

AR 00-1(4) at *4. Hypothetically, if this Ruling applied, the remoteness of time between the

previously adjudicated period (2001) and the subsequent claim (2010) would likely be accorded

less weight by an ALJ because of the nine year gap.

Third, Plaintiff insinuates some nefarious conduct by the Commissioner since the

administrative file contains records predating her alleged onset date of disability for her current

claims including educational records dating back to 1982, psychiatric hospitalization records

from 1997 as well as psychiatric treatment records from Dr. Carol Greer Williams dating back to

1997, psychiatric treatment notes from Dr. Parviz Sahandy dating back to 1999, and treatment

records from Omni House dating back to 2005. ECF No. 16-1 at 24. The administrative file

however does not contain records pertinent to the prior allowed claim. Plaintiff thus contends

"SSA chose to make a potential defacto reopening of her prior claims when they pulled evidence

from their archives including their own state agency assessment dated <u>January 7, 2008</u> and

January 16, 2008." *Id.* at 23-24 (citations omitted).

The undersigned rejects Plaintiff's contention of a *de facto* reopening of a prior claim.

Nowhere in the decision does the ALJ discuss the merits of the prior allowed disabled child

claim. The Commissioner correctly assessed the ALJ's actions:

14

> [T]he ALJ's decision reveals that, appropriately, he only looked at evidence predating January 1, 2008 to acquire longitudinal perspective and to assess whether Ms. Rapczynski had deficits in adaptive functioning that initially manifested before age 22, a requirement for establishing a current diagnosis of mental retardation (Tr. 18, 22-23). The ALJ neither mentioned nor relied on the rest of the evidence related to Ms. Rapczynski's prior claims, and he plainly did not reopen the merits of the prior determination awarding benefits.

ECF No. 17-1 at 9. The undersigned finds no error committed by the ALJ.

B.       *RFC Determination Purportedly Deficient*

Plaintiff claims the ALJ's RFC determination limiting her to simple, routine, and repetitive tasks in a low stress work environment (low stress meaning no strict production quotas) and finding she can only occasionally and superficially interact with the public, coworkers, and supervisors is deficient because (a) the ALJ failed to comply with Social Security Ruling ("SSR") 96-8p[13], (b) the ALJ's finding at step three is inconsistent with the RFC, and (c) the finding is contrary to the mandate of *Mascio v. Colvin*, 780 F.3d 632 (4th Cir. 2015).

Plaintiff argues the ALJ failed to conduct to a detailed assessment of her mental RFC as mandated by SSR 96-8p. This Ruling directs that an ALJ must first identify the claimant's functional limitations or restrictions and assess the claimant's work-related abilities on a function-by-function basis. SSR 96-8p, 1996 WL 374184, at *1 (July 2, 1996)(S.S.A.). It is undisputed that Ms. Rapczynski's impairments are mental in nature. She has no physical strength limitations. *See* R. at 16 ("the claimant has the residual functional capacity to perform a full range of work *at all exertional levels*. . . .) (emphasis added). Ms. Rapczynski did not claim nor did the ALJ find *any* postural, manipulative, visual, or communicative limitations. Further, her

---

[13] Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims. 1996 WL 374184 (July 2, 1996) (S.S.A.).

capacity to perform work is not restricted based on environmental factors. Her nonexertional capacity is restricted solely based on her ability to perform mental activities.

"Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting." SSR 96-8p, at *6. Plaintiff asserts the ALJ failed to adequately address these mental functions and thus the ALJ's mental RFC determination does not satisfy the requirements of SSR 96-8p. ECF No. 16-1 at 26. Moreover, Plaintiff asserts the ALJ failed to assess her capacity to perform work for eight hours per day.

The Commissioner contends the ALJ plainly considered work-related mental activities which are explicitly incorporated in Ms. Rapczynski's RFC. With regard to working on a regular and continuing basis, the Commissioner argues "an ALJ's RFC finding implicitly contains a finding that the claimant can complete an eight-hour workday." ECF No. 17-1 at 16. Although the ALJ did not explicitly address the capacity to work eight hours per day, the ALJ implicitly addressed the matter as follows: "The claimant discontinued working when she became pregnant. Since discontinuing her work, a significant amount of her time has been spent caring for and advocating for her disabled autistic child; a task which, apparently, leaves little time for gainful employment." R. at 23. The undersigned finds the ALJ complied with SSR 96-8p's function-by-function analysis.

C.      *Alleged Improper Evaluation of Medical Evidence*

Because of the numerous opinions considered by the ALJ, the undersigned has created the following table identifying the weight assigned, the author of the opinion, the date of the opinion and the ALJ's explanation.

| Weight Assigned | Author of Opinion | Date of Opinion | ALJ's Explanation |
|---|---|---|---|
| No weight | Stephanie Tucker, M.D. (cosigned by Eunice Woodus, LCSW & Katie Kalbaugh, LCSW[14]) | 1/26/12 | "[T]here is no indication in the record that Dr. Tucker saw the claimant. As indicated by the handwriting in this report, the actual author of this opinion is Katie Kalbaugh. Her opinion has already been addressed in the previous hearing decision." |
| Minimal | M. Noel Kowalczyk, LSWA[15] | 2/23/12 | ALJ found opinion internally inconsistent because Ms. Kowalczyk found claimant is unable to complete simple tasks and has difficulty with interpersonal tasks, yet, claimant provides adequate care to her 2 year old autistic daughter. Difficulty with interpersonal tasks is not a marked limitation but suggests moderate limitations in social functioning. Much of opinion relies on claimant's subjective reports. |
| Modest | Ram Raheja, M.D. | 6/4/10 | Dr. Raheja opined claimant is unable to work. "His findings are not consistent with his determination that the claimant has 'moderate' mental functioning limitations per his examination findings and his GAF assessment of 65[16]." |
| Modest | Katie Kalbaugh, LCSW | 5/11/11 | As to the GAF score of 55. "Despite assigning a GAF of 55, which is consistent with moderate symptoms, Ms. Kalbaugh found marked limitations in social functioning and concentration, persistence, and pace. Thus, her findings are internally |

---

[14] Licensed Certified Social Worker.

[15] Licensed Social Worker Associate.

[16] A Global Assessment of Functioning (GAF) assessment of 65, which is between the scale of 61 to 70, indicates "*[s]ome mild symptoms* (e.g. depressed mood and mild insomnia) *OR some difficulty in social, occupational, or school functioning* (e.g. occasional truancy, or theft within the household)**,** *but generally functioning pretty well, has some meaningful interpersonal relationships.*"  DSM-IV-TR, p. 34.

| | | | |
|---|---|---|---|
| | | | inconsistent. The GAF of 55 assigned in treatment is more consistent with the claimant's clinical presentation rather than the limitations asserted in the opinion offered as part of the claimant's disability case." |
| Modest | Katie Kalbaugh, LCSW | 1/26/12 | Ms. Kalbaugh opined claimant is unable to work. "Ms. Kalbaugh's findings are not consistent with her clinical findings, which support no worse than moderate mental functioning limits. Notably, Ms. Kalbaugh assigned the claimant a GAF score of 58 just one month earlier, a GAF score which is assigned substantial weight because it is consistent with the evidence of record and her clinical signs of the claimant this day." |
| Modest | Malika Muse, BSW[17] | 2/15/12 | Ms. Muse opined claimant is isolated socially. "The claimant reported to Ms. Muse that she had not used marijuana since 'she was a teenager' i.e., some time before March, 2002. Yet, the claimant reported to her treating sources that she used marijuana as late as December 2010. This incorrect information on an issue critical to the disability analysis renders her opinion of little value, particularly since it does not rely on objective clinical signs uncovered during examinations of the claimant, but on subjective reports of the claimant." |
| Modest | Kimberly Clemens, LGPC[18] | 1/8/14 | Ms. Clemens concluded claimant is severely in need of disability benefits due to claimant's psychiatric history and current apparent symptoms. "It appears that Ms. Clemens is stating that the claimant has a financial need for |

---

[17] Bachelor of Social Work.
[18] Licensed Graduate Professional Counselor.

| | | | |
|---|---|---|---|
| | | | disability, and not that she meets the regulatory criteria for disability. Ms. Clemens bases her opinion on the claimant's reported history and alleged symptoms and not on objective clinical signs. By use of the modifier 'apparent,' it does not seem that Ms. Clemens is convinced that the claimant is actually experiencing her reported symptoms." |
| Modest | Melis[s]a Pool, LCSW-C[19] | 1/28/14 | Ms. Pool concluded claimant "is not capable of being gainfully employed. Ms. Pool's examination of the claimant merely supports moderate mental functioning limitations." |
| Some | Kim Clemens, M.S. | 7/9/13 | As to the GAF score of 50. "The assessment, which reflects serious symptoms, is consistent with the claimant's brief deterioration in mental condition leading up to her psychiatric hospitalization in September 2013, which was subsequently reversed. However, the great majority of the claimant's mental health treatment during the period under adjudication supports moderate mental functioning limitations." |
| Moderate | Ram Raheja, M.D. | 1/22/10 | As to the GAF score of 65. "The score is somewhat higher than his mental status examination signs would indicate. Dr. Raheja's clinical signs support moderate mental functioning limits." |
| Moderate | E. Lessans, Ph.D. (State agency psychological consultant) | 8/17/10 | Dr. Lessans concluded claimant has no severe mental impairments. "Dr. Lessans' conclusions are internally inconsistent and not consistent with the evidence of record. Specifically, one or two decompensations are associated with a 'severe' impairment." |

---

[19] Licensed Certified Social Worker-Clinical.

| Moderate | Katie Kalbaugh, LCSW-C | 4/5/11 | As to the GAF score of 45. "A GAF score of 45 represents serious symptoms or serious impairment in social, occupational, or school functioning. Ms. Kalbaugh's clinical signs of the claimant this day are inconsistent with her GAF assessment. Her clinical findings support no worse than moderate mental functioning limits." |
|---|---|---|---|
| Moderate | Katie Kalbaugh, LCSW-C | 5/16/11 | With regard to marked difficulties in social functioning and in concentration, persistence, or pace. "In an examination dated April 5, 2011, Ms. Kalbaugh merely found that the claimant had fair insight and judgment, and difficulty focusing, concentrating, and remembering. Thus, unlike the opinion she submits to the Commissioner in support of the claimant's claim for disability, the objective clinical signs she uncovers in her examinations of the claimant merely support moderate mental limitation. Likewise, with regard to social functioning, in Ms. Kalbaugh's objective, clinical examination of the claimant performed on April 5, 2011, unlike the assertions contained in documents she offers in support of the claimant's application for disability, she finds that the claimant was calm and cooperative. However, these clinical signs would not ordinarily be relied upon to support a finding of marked social limitations." |
| Moderate | [Eunice Woodus, LCSW][20] | 7/1/11 | As to the GAF score of 45. "A GAF score of 45 represents serious symptoms or serious impairment in social, occupational, or school functioning. Ms. [Woodus]' |

---

[20] The ALJ *incorrectly* identified Katie Kalbaugh, LCSW-C, as the author of this opinion. *See* R. at 1541-42.

| | | | |
|---|---|---|---|
| | | | clinical signs of the claimant this day are inconsistent with her GAF assessment. Her clinical findings support no worse than moderate mental functioning limits." |
| Moderate | Shamsia Ally, M.D. | 6/20/13 | Re: conclusion that claimant has substantial loss of ability to understand carry out and remember simple tasks, deal with changes in a routine work setting and respond appropriately to supervision, coworkers, and usual work situations. "Dr. Ally found marked restriction in activities of daily living, marked difficulties in social functioning and concentration, persistence or pace, and repeated episodes of decompensation of extended duration. Dr. Ally's contemporaneous mental status examinations of the claimant were mostly normal with a few, scattered positive clinical signs supporting no more than moderate mental functioning limitations. Specifically, Dr. Ally found upon examining the claimant just seven days after authoring this opinion that, despite being sad and anxious, the claimant was calm and cooperative and had normal attention and concentration." |
| Moderate | Melissa Pool, LCSW-C | 10/29/13 | As to the GAF score of 45. "Mental status examination of this day was mostly normal, with a few scattered abnormal clinical signs supporting no more than moderate mental functioning limits." |
| Moderate | unknown | 12/9/13 | As to the GAF score of 50. "The entirety of the evidence supports no more than moderate mental functioning limitations." |
| Moderate | Shamsia Ally, MD | 1/28/14 | Re: claimant is unable to acquire and hold employment now. "Dr. Ally's contemporaneous mental |

| | | | status examinations of the claimant were mostly normal with a few, scattered positive clinical signs supporting no more than moderate mental functioning limitations. In addition, Dr. Ally merely relies upon the claimant's subjective assertions in forming her opinion and not on the objective clinical signs she uncovered in her examination of the claimant. Thus, she does not appear to be offering a medical opinion, but appears to be assuming the role of disability advocate." |
|---|---|---|---|
| Substantial | Ram Raheja, M.D. | 5/22/10 | Re: "disability?" notation. "Dr. Raheja's questioning whether the claimant is disabled is supported by his clinical findings and claimant's reported history to him." |
| Substantial | Michael DeAntinso, LCSW-C | 10/7/10 | As to the GAF score of 52. "The evaluation notes that the claimant had been 'off meds for 2 weeks.' The GAF score of 52, which reflects serious[21] symptoms, is consistent with mental functioning when off medications for two weeks and the mental status examination performed this day." |
| Substantial | T. Spurgeon, M.D. [State agency psychiatric consultant] | 12/1/10 | Dr. Spurgeon concluded claimant is capable of following two and three step commands and simple instructions. "Dr. Spurgeon further concluded that the claimant should be limited to jobs not requiring frequent contact with the general public or constant contact with supervisors. Dr. Spurgeon's opinion is consistent with the evidence of record." |
| Substantial | Dr. Spurgeon | 12/1/10 | Dr. Spurgeon concluded claimant |

---

[21] A GAF score of 52 reflects *moderate* symptoms according to the Global Assessment of Functioning (GAF) Scale. Scores of 51 to 60 reflect *moderate* symptoms or *moderate* difficulty in social, occupational, or school functioning. *See* DSM-IV-TR, p. 34.

| | | | |
|---|---|---|---|
| | | | is limited to "mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and one or two episodes of decompensation of extended duration. Dr. Spurgeon's findings are consistent with the evidence of record." |
| Substantial | Katie Kalbaugh, LSCW-C | 12/6/11 | As to the GAF score of 58. "A GAF score of 58 is consistent with moderate symptoms or moderate difficulty in social, occupational or school functioning. Ms. Kalbaugh's assessment is consistent with the evidence of record and her mental status examination of the claimant this day." |
| Substantial | Denise Katz, CRNP[22] | 1/1/13 | As to finding of moderate depression. "M[s]. Katz's findings are consistent with evidence of record." |
| Substantial | Susan Bullen, R.N. | 9/12/13 | As to the GAF score of 50[23] at discharge from psychiatric hospitalization. "After just six days of inpatient psychiatric hospitalization, the claimant's mental functioning was already approaching baseline." |

At the outset the undersigned notes the ALJ used *six adjectives* in assigning weight to the various opinions, *i.e.*, "no", "minimal", "modest", "some", "moderate" and "substantial". The ALJ did not define these classifications. "Without more specific explanation of the ALJ's reasons for the differing weights he assigned various medical opinions, . . . the district court can [not] undertake meaningful substantial-evidence review." *Monroe v. Colvin*, ___ F.3d ___, 2016 WL 3349355, at *11.

---

[22] Certified Registered Nurse Practitioner.
[23] A GAF score of 50 reflects *serious* symptoms according to the Global Assessment of Functioning (GAF) Scale. Scores of 41to 50 reflect *serious* symptoms or *serious* difficulty in social, occupational, or school functioning. *See* DSM-IV-TR, p. 34.

In reviewing the differing weights, the undersigned finds "no" and "substantial" are self-evident. However, this reviewer has had to determine where the other four categories fall in between "no" and "substantial." This reviewer <u>assumes</u> "minimal" is less than "modest", which is less than "some", which is less than "moderate". This reviewer thus organized the above table from *lowest* weight to *highest* weight.

As reflected by the table, the ALJ assigned weight to *twenty-five* (25) medical source ("acceptable medical sources"), medical source ("not acceptable medical sources"), and non-medical source opinions. The undersigned notes the ALJ failed to accord weight to the July 12, 2010 medical opinion of Mikhael Taller, M.D., a consultative psychiatrist, *see* R. at 592-602 (Ex. 5F) and the January 7, 2008 medical opinion of David Pope, M.D., a consultative psychiatrist, *see* R. at 1382-87 (Ex. 17F). The ALJ does mention these doctors' findings at step three of the sequential evaluation process. *See* R. at 14-15. The ALJ also refers to Dr. Taller's findings in summarizing the medical evidence of record in determining Ms. Rapczynski's RFC.

Further, the ALJ failed to accord weight to the January 16, 2008 opinions of L. Payne, Ph.D., a State agency psychological consultant, who completed both Form SSA-4734-F4-SUP, *Mental Residual Functional Capacity Assessment*, *see* R. at 1389-92 (Ex. 18F), and Form SSA-2506-BK, *Psychiatric Review Technique*, *see* R. at 1391-1406 (Ex. 19F). The ALJ however discussed Dr. Payne's findings at step three. *See* R. at 15. Similarly, the ALJ failed to accord weight to the September 8, 2008 opinions of E. Edmunds, Ph.D., a State agency psychological consultant, who completed both Form SSA-2506-BK, *Psychiatric Review Technique*, *see* R. at 1459-72 (Ex. 22F), and Form SSA-4734-F4-SUP, *Mental Residual Functional Capacity Assessment*, *see* R. at 1473-76 (Ex. 23F). Based upon the undersigned's review, the ALJ never mentioned the opinions of E. Edmunds, Ph.D. in the decision.

Finally, the ALJ failed to accord weight to the findings of Edward Ansel, Ph.D., a consultative psychologist, who conducted a psychological examination of Ms. Rapczynski on February 27, 2012. The results of the Wechsler Adult Intelligence Scale placed Ms. Rapczynski in the "extremely low" range of intelligence. The ALJ explained in detail his basis for discounting this opinion. He failed however to accord weight to this opinion.

Social Security Ruling ("SSR") 96-6p states,

> Because State agency medical and psychological consultants and other program physicians and psychologists are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(f) and 416.927(f) require administrative law judges . . . to consider their findings of fact about the nature and severity of an individual's impairment(s) as opinions of nonexamining physicians and psychologists. Administrative law judges . . . are not bound by findings made by State agency or other program physicians and psychologists, but they may not ignore these opinions and *must explain the weight given to the opinions in their decisions.*

SSR 96-6p, 1996 WL 374180, at *2 (July 2, 1996) (S.S.A.) (emphasis added). This Ruling also addresses assessment of RFC.

> Although the administrative law judge and the Appeals Council are responsible for assessing an individual's RFC at their respective levels of administrative review, the administrative law judge . . . *must consider and evaluate any assessment of the individual's RFC* by a State agency medical or psychological consultant and by other program physicians or psychologists. At the administrative law judge . . . level[], RFC assessments by State agency medical or psychological consultants or other program physicians or psychologists *are to be considered and addressed in the decision as medical opinions* from nonexamining sources about what the individual can still do despite his or her impairment(s).

*Id.*, at *4 (emphasis added).

The ALJ summarizes the findings of Dr. Pope and Dr. Taller at step three as well as the findings of State agency psychological consultants.[24] A discussion of these doctors' findings however does <u>not</u> satisfy SSR 96-6p which requires the ALJ to explain the weight given to the opinions. The ALJ failed to assign weight to the opinions of Drs. Pope, Taller, Payne, and Edmunds.[25] The ALJ further failed to abide by SSR 96-6p by considering and addressing the mental RFC assessments of Drs. Payne and Edmunds. The Court "cannot determine if findings are unsupported by substantial evidence unless the [Commissioner] explicitly indicates the weight given to all of the relevant evidence." *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984).

Besides the lack of explanation for the differing weights assigned and the failure to accord weight to a handful of medical opinions, the ALJ runs afoul of *Monroe* because of his conclusory analysis of various opinions. For instance,

| Substantial | Denise Katz, CRNP | 1/1/13 | As to finding of moderate depression. "M[s]. Katz's findings are consistent with evidence of record." |
| Moderate | unknown | 12/9/13 | As to the GAF score of 50. "The entirety of the evidence supports no more than moderate mental functioning limitations." |
| Modest | Melis[s]a Pool, LCSW-C | 1/28/14 | Ms. Pool concluded claimant "is not capable of being gainfully employed. Ms. Pool's examination of the claimant merely supports |

---

[24] The ALJ specifically cites to Exhibits 10F (Dr. Spurgeon, a State agency *psychiatric* consultant) and 18F (L. Payne, Ph.D.). *See* R. at 15 n.8, n.14.

[25] The failure to assign weight to the opinions of Drs. Pope, Payne, and Edmunds may be attributed to the fact, in the initial decision, the ALJ found Ms. Rapczynski has not engaged in substantial gainful activity since *February 1, 2009*. R. at 115. The opinions of these doctors all *predate* February 1, 2009, *i.e.,* Dr. Pope (January 7, 2008), Dr. Payne (January 16, 2008) and Dr. Edmunds (September 8, 2008). However, after the Appeals Council remanded the case, in the supplemental decision, the ALJ found Ms. Rapczynski has not engaged in substantial gainful activity since *January 1, 2008*. R. at 13.

|  |  |  | moderate mental functioning limitations." |
|---|---|---|---|

The ALJ fails to describe *how* the evidence supports his conclusions. These analyses are "incomplete and preclude[] meaningful review." *Monroe*, 2016 WL 3349355, at *11.

When comparing the weights the ALJ assigns to Dr. Raheja's opinions,

| Moderate | Ram Raheja, M.D. | 1/22/10 | As to the GAF score of 65. "The score is somewhat higher than his mental status examination signs would indicate. Dr. Raheja's clinical signs support moderate mental functioning limits." |
|---|---|---|---|
| Substantial | Ram Raheja, M.D. | 5/22/10 | Re: "disability?" notation. "Dr. Raheja's questioning whether the claimant is disabled is supported by his clinical findings and claimant's reported history to him." |
| Modest | Ram Raheja, M.D. | 6/4/10 | Dr. Raheja opined claimant is unable to work. "His findings are not consistent with his determination that the claimant has 'moderate' mental functioning limitations per his examination findings and his GAF assessment of 65." |

the rationale for assigning "modest" weight to Dr. Raheja's June 4, 2010 opinion seems internally inconsistent since the ALJ accorded "substantial" weight to the opinion Dr. Raheja issued thirteen days earlier. It is even more perplexing that the ALJ cites to the January 22, 2010 opinion as the basis for assigning "modest" weight to the June 4, 2010 opinion.

The ALJ is critical of Dr. Lessans' conclusion that Ms. Rapczynski has no severe mental impairments.

| Moderate | E. Lessans, Ph.D. (State agency psychological consultant) | 8/17/10 | Dr. Lessans concluded claimant has no severe mental impairments. "Dr. Lessans' conclusions are internally inconsistent and not |
|---|---|---|---|

| | | | consistent with the evidence of record. Specifically, one or two decompensations are associated with a 'severe' impairment." |
|---|---|---|---|

However, the ALJ, himself, found "claimant has experienced **no** episodes of decompensation of extended duration. R. at 15. The ALJ's determination is inconsistent with Dr. Spurgeon's opinion which was accorded "substantial" weight.

| Substantial | Dr. Spurgeon | 12/1/10 | Dr. Spurgeon **concluded** claimant is limited to "mild restriction in activities of daily living, moderate difficulties in social functioning and concentration, persistence or pace, and **one or two episodes of decompensation of extended duration.** Dr. Spurgeon's findings are consistent with the evidence of record." |
|---|---|---|---|

If Dr. Spurgeon's findings are consistent with the evidence of record, why did the ALJ determine Ms. Rapczynski has experienced **no** episodes of decompensation of extended duration?

Finally, the ALJ's rationale for the weight assigned to the following opinion is bewildering:

| Modest | Malika Muse, BSW | 2/15/12 | Ms. Muse opined claimant is isolated socially. "The claimant reported to Ms. Muse that she had not used marijuana since 'she was a teenager' i.e., some time before March, 2002. Yet, the claimant reported to her treating sources that she used marijuana as late as December 2010. This incorrect information on an issue critical to the disability analysis renders her opinion of little value, particularly since it does not rely on objective clinical signs uncovered during examinations of the claimant, but on subjective reports of the |
|---|---|---|---|

| | | claimant." |
|---|---|---|

The ALJ does not explain how use of marijuana is relevant to Ms. Muse's opinion that Ms. Rapczynski is *isolated socially*. Ms. Muse is a case manager with Anne Arundel County Community Residences. "We serve those who are or who have recently been homeless, as well as adults with disabilities who live independently yet benefit from supportive community integration, socialization, recovery programs, daily living skills assistance and case management services." R. at 516. Ms. Muse explained the basis of her opinion:

> Ms. Rapczynski['s] days consist of caring for her daughter [] and traveling to [her daughter's] doctor's appointments. Jeanine [Rapczynski] neglects her mental healthcare because she does not have adequate childcare. Since the death of Jeanine's mother[,] Jeanine has [a] completely isolated environment. Jeanine expresses extreme paranoia with her neighbors and[/]or relatives. Jeanine identifies with feelings of abandonment, mistrust and distorted thoughts/perceptions, particularly in terms of relationships and interactions with others. Jeanine states that "my anger gets the best of me at times." Her moods consist of being depressed or anxious, detached and indifferent or vulnerable and hypersensitive. She can swing from elated agitation to mournful gloom at the blink of an eye. Jeanine fears that her daughter [] will be taken away from her.

R. at 518. At the January 30, 2014 supplemental hearing Kim Clemmons, who saw Ms. Rapczynski two to three times a week for a psychiatric rehabilitation program, testified about Ms. Rapczynski's social interactions.

> BY ADMINISTRATIVE LAW JUDGE:
>
> Q      Now are you aware from - - of any people visiting Ms. Rapczynski socially, just friends?
>
> A      No. I'm sorry, Your Honor, she doesn't have any friends.
>
> CLMT:      In -- I'm not supposed to say it.
>
> ALJ: Ms. Rapczynski, if you said that people visit you occasionally - - no, no friends visit?

CLMT:        I don't have any friends.

ALJ:  Do you think the doctor was mistaken when, when he wrote that down, because that's what he wrote down?

CLMT:        What are, what's - -

Q     He said that people visit you occasionally but not friends? You don't have any friends that come over?

A     No.

WIT:  I don't know what he was referring to, Your Honor, but I can say that she has me come into the house, at one time she had Family Preservation coming into the house, she had a behavioral specialist for [her daughter] come into the house, teaching her life things. It could have been the Dunne & Wright people, that's the housing I guess overseer for the section eight that'll come in and do housing inspections.

R. at 98. Discounting Ms. Muse's opinion about Ms. Rapczynski's social isolation *solely* because Ms. Rapczynski purportedly did not *accurately* report when she discontinued using marijuana, based on what Ms. Rapczynski reported to *other* treating sources without any proof that Ms. Muse was aware of any inconsistency or that Ms. Muse had access to records from other treating sources, is irrational. "Even if legitimate reasons exist for rejecting or discounting certain evidence, the [Commissioner] cannot do so for no reasons or for the wrong reason." *King v. Califano*, 615 F.2d 1018, 1020 (4th Cir. 1980).

5.  **Conclusion**.

      Substantial evidence does not support the decision that Plaintiff is not disabled. Accordingly, the Plaintiff's alternative request for remand will be granted and Defendant's Motion for Summary Judgment will be denied.

Date: <u>August 31, 2016</u>             _____/s/_____
                                          WILLIAM CONNELLY
                                  UNITED STATES MAGISTRATE JUDGE